Ralph Tager v. Commissioner.
Tager v. Commissioner
Docket No. 47712.
United States Tax Court
T.C. Memo 1956-126; 1956 Tax Ct. Memo LEXIS 168; 15 T.C.M. (CCH) 652; T.C.M. (RIA) 56126; May 24, 1956
*168 Held, there was no valid and bona fide partnership in the years 1944 and 1945; held, further, certain sales were improperly omitted from the petitioner's income in the years 1943, 1944 and 1945; and held, further, a portion of the deficiency for each of the years 1943, 1944 and 1945 was due to fraud with intent to evade tax. Vincent B. Lewin, Esq., for the petitioner. William A. Schmitt, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies and additions for fraud as follows: Additions under
Year
Deficiency
section 293(b)
1943
$ 6,098.79
$ 3,049.40
1944
51,415.99
25,708.00
1945
42,349.70
21,174.85
The issues are (1) whether certain sales in the amount of $12,763.62 are includible in the petitioner's income for 1943; (2) whether there existed a valid and bona fide partnership in 1944 and 1945 for income tax purposes; (3) whether sales amounting to $36,861.75 in 1944 and $51,526.95 in 1945 are includible in the petitioner's income for those years; and (4) whether additions to the tax for fraud are due under section 293(b) of the 1939 Internal Revenue *169 Code for the years 1943 through 1945. Petitioner conceded at the hearing that certain amounts of dividend income, interest income, and capital gains were improperly omitted from his income for the years 1943, 1944, and 1945. Effect will be given to this under the Rule 50 computation. Other adjustments and disallowances by the respondent have not been contested on brief or at the hearing and as to these items the respondent is sustained. Findings of Fact Ralph Tager, hereinafter called the petitioner, filed his income tax returns for the years 1943 through 1945 with the then collector of internal revenue for the first district of New York. Partnership returns were filed for the years 1944 and 1945 by the Yarn Manufacturers Agency with the then collector of internal revenue for the first district of New York. In 1936 the petitioner and one Joseph H. Talbot formed a corporation, Associated Spinners, Incorporated, to engage in the yarn business. The venture was unsuccessful and the corporation ceased doing business early in 1940, at which time an assignment was made for benefit of creditors. Some of the raw materials and yarns were kept by the petitioner and stored by him. Petitioner *170 in 1943 was a salesman for one Israel Tager, and he worked for the Naval Clothing Depot and the War Shipping Administration as well. In 1943 the petitioner was also engaged in the business of selling yarns under the name of H. Berg, which was his wife's maiden name, and in that year he sold yarns in the amount of $12,765.62. These sales were not recorded by the petitioner in any books or records and he did not report such sales in his income tax return for 1943. In 1944 the petitioner made arrangements to conduct the business of selling yarns under the name of Yarn Manufacturers Agency, a purported partnership. There was no partnership agreement. His brothers, Milton and Sidney, were in the Army during most of the period here involved and neither of them performed any duties or services for the partnership in 1944 and 1945. The business of the Yarn Manufacturers Agency was conducted from a foyer in petitioner's home. Except for answering the telephone, petitioner's wife performed no duties as a partner. All the selling was done through the efforts of the petitioner. There was no intent in good faith on the part of the petitioner and the others involved to form a valid and bona fide *171 partnership in the years 1944 and 1945. Petitioner made sales of yarns in 1944 under the name of H. Berg and Yarn Manufacturers Agency in the amount of $36,861.75 which were unreported either in the individual income tax return for 1944 filed by the petitioner or in the partnership return for 1944 filed for the Yarn Manufacturers Agency. Petitioner made sales of yarns in 1945 under the name Yarn Manufacturers Agency amounting to $51,526.95 which were unreported in the petitioner's individual income tax return or in the partnership return for 1945. Respondent included these unreported sales, together with the sales reported by the partnership, in the petitioner's income for the years 1944 and 1945. A part of the deficiency for each of the years 1943 through 1945 was due to fraud with intent to evade tax. Opinion MULRONEY, Judge: Petitioner sold yarns in 1943 amounting to $12,765.62 which he did not record in his books or report such sum in his income for that year. His explanation is that in 1936 he had invested approximately $21,000 in a corporation, Associated Spinners, Inc., and that when the business failed in 1946, the liquid assets went to satisfy creditors while the yarns *172 and raw materials on hand were distributed to the petitioner who was able to dispose of it in 1943. Such income in 1943 was a return of his capital investment in the defunct corporation, argues the petitioner, and for that reason was not includible in his income. There is no merit in this argument. Any losses suffered by the petitioner in connection with the defunct corporation should have been taken in the year when the loss took place, which from all the evidence, occurred prior to the years here involved. We hold that the sales in 1943 amounting to $12,765.62 are includible in petitioner's income for that year. Respondent contends that there was no bona fide intent to create a valid partnership in the years 1944 and 1945 and that petitioner must include in his individual income for those years all income attributed by the petitioner to Yarn Manufacturers Agency, the purported partnership. We agree. The valid existence of a partnership for Federal tax purposes depends upon the intent of the parties, which is a question of fact. The Supreme Court in Commissioner v. Culbertson, 337 U.S. 733, stated the rule to be applied as follows: "The question is * * * whether, *173 considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" Here, the petitioner's two brothers performed practically no services in the partnership. Petitioner's own testimony was that "they didn't do much, unfortunately, because they were in the Service." Petitioner's wife, apart from answering the telephone which was located in her own home and attending to some minor clerical duties, performed no services which would indicate that she was an intended partner. Petitioner, who was the only witness in his behalf, gave some vague and inconclusive testimony with respect to the formation of the partnership and capital contributions made by each of the proposed partners. He said he and his wife met with his two brothers with respect to forming *174 this partnership. He could not recall the date of the meeting and he did not remember where in New York City the meeting took place. He merely stated they each put in "I think $500.00 down to start the business. It may have been a thousand, * * *" He finally stated: "If I recall, it was a total of $2,000 each eventually." We are not convinced from the nature of this testimony that any capital contributions were made by the petitioner's wife and brothers. We are somewhat fortified in this conclusion by reason of petitioner's testimony denying sales to customers which, as will later appear, we find unreliable. Another factor of importance is the absence of a partnership agreement, which, together with the conduct of the parties, shows a lack of intent to conduct the business of selling yarns as a partnership. Mary Frances Lewis, 23 T.C. 538. So far as we can determine from all the evidence, the sales of yarns resulted from the efforts of the petitioner himself. We hold, upon consideration of all the facts, that the petitioner and other parties mentioned did not in good faith and acting with a business purpose intend that the business of the Yarn Manufacturers Agency be conducted *175 as a partnership and that all income for 1944 and 1945 attributed by the petitioner to the alleged partnership is includible in his individual income for those years. Respondent has determined that substantial amounts of sales made by the petitioner in the years 1944 and 1945 under the name of Yarn Manufacturers Agency were omitted from income, both in the partnership returns and in the petitioner's individual returns filed for those years. Respondent had as witnesses several of the petitioner's customers who gave very positive and convincing testimony of purchases from the petitioner of substantial amounts of yarn in 1944 and 1945. Most of these sales were substantiated by invoices and checks introduced in evidence. Petitioner flatly denied these sales were ever made. We are convinced, from all the evidence, that these sales were made, and we hold that the respondent's determinations of deficiencies for 1944 and 1945, based in part on these omitted sales, are correct. Respondent has concluded that some part of the deficiency for each of the years 1943, 1944, and 1945 was due to fraud with intent to evade tax and has added the 50 per cent additions to the deficiencies under section *176 293(b) of the 1939 Internal Revenue Code for each of the years here involved. Here the respondent has the burden of proof, and he must prove fraud in each instance by clear and convincing evidence. Substantial amounts of sales were unreported by the petitioner in his individual income tax return for 1943 and in the returns he filed for the purported partnership in 1944 and 1945. Substantial understatements of income which appear consistently over a period of years are evidence of fraud. M. D. Eagle, Jr., 25 T.C. 169 (filed October 31, 1955); Arlette Coat Co., 14 T.C. 751. Most of the unreported sales in each of the three years were not recorded by the petitioner either in his own individual books and records or in those of the alleged partnership. Many of these sales were cash transactions. No tenable explanation is offered for these omissions. The omitted 1943 sales, made by the petitioner under the name H. Berg, his wife's maiden name, were according to the petitioner's view, a return of capital from a prior venture. This does not, however, explain a failure to record such sales and to report them in some manner. Moreover, such omissions, viewed together *177 with the substantial omissions of sales in 1944 and 1945, convinces us that the petitioner omitted these sales with the fraudulent intent of evading tax. In each of the years the petitioner failed to include other items, apart from sales, in his income. In 1944 and 1945 he took large deductions on the returns filed for the purported partnership for personal living expenses which he in no way attempted to justify. We have considered all the evidence and have observed the petitioner's manner under examination, and we believe that the record as a whole reveals, in a clear and convincing manner, a pattern of deliberate omissions of income by the petitioner in the years involved. M. D. Eagle, Jr., supra.We hold that a part of the deficiency for each of the years 1943, 1944, and 1945 was due to fraud with intent to evade tax. Decision will be entered under Rule 50.